(No. 64888.—■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOSEPH YOUNG, Appellant.

*Opinion filed September 22, 1988.*

148

Thomas K. McQueen and Robert D. Nachman, of Chicago (Jenner & Block, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Roma Jones Stewart, Solicitor General, and Terence M. Madsen, Assistant Attorney General, both of Chicago, and Thomas V. Gainer, Jr., Kenneth T. McCurry and John A. Gasiorowski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

The defendant, Joseph Young, age 20, was convicted of the murder and armed robbery of Mrs. Willie Davis, age 63, at a bench trial in the circuit court of Cook County. The People sought the death penalty. Pursuant to the defendant's request, a jury was selected to consider defendant's eligibility for the death penalty and whether to impose it.

At the bifurcated penalty hearing, the jury found the defendant eligible for the death penalty, in that he was over 18 years of age and had committed a murder in the course of an armed robbery. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b).) In the second phase of the penalty hearing, the jury was unable to unanimously agree that there were no mitigating factors sufficient to preclude the imposition of the death penalty. Accordingly, a subsequent sentencing hearing was conducted by the court, as required by statute. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(g).) The court, after considering all arguments and the presentence report, sentenced the defendant to natural life imprisonment, based on the fact that an aggravating factor listed in section 9—1(b) of the Criminal Code of 1961 was present (murder committed in the course of an armed robbery) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)). (See Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1).)

The court imposed an extended 60-year term for the armed robbery conviction, based on the fact that the offense was accompanied by exceptionally brutal or heinous behavior. Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).

The defendant appealed the convictions and the sentences. The appellate court, in a Rule 23 order (107 Ill. 2d R. 23), upheld the convictions but remanded the matter to the trial court to reconsider the sentence in view of defendant's age and because the sentence precluded any possibility of parole. (113 Ill. App. 3d 1165 (unpublished order under Supreme Court Rule 23).) Following the remand, the defendant moved the court to order a supplemental presentence investigation and report, which would relate information concerning defendant's good conduct while incarcerated. The court denied the motion. At the subsequent hearing, the court again denied a similar motion. It determined that defendant's conduct in prison had no bearing on the sentencing issues it considered at the first hearing, and that it was beyond the mandate of the appellate court's remand order. The court did allow the defendant to present witnesses and letters from prison staff in order to make a record for a potential appeal. Following this, and after hearing arguments of counsel, the judge reaffirmed the original sentence.

The nature of and authority for the appellate court's remand are not clear. The defendant contends that the appellate court's Rule 23 order set aside or vacated the defendant's sentence and remanded the case for a resentencing hearing. The appellate court, on appeal from the affirmance of the sentence, indicated that its original Rule 23 order did not vacate the original sentence, but remanded only for a reconsideration of that sentence in light of defendant's age and the fact that the sentence precluded parole. 152 Ill. App. 3d at 364.

The authority of reviewing courts in criminal cases is set out in Rule 615(b) (107 Ill. 2d R. 615(b)). The authority of reviewing courts in civil cases is set out in Rule 366 (107 Ill. 2d R. 366). The authority in civil cases, as set out in Rule 366, is much broader and more specifically stated than is the authority of a reviewing court in criminal appeals as stated in Rule 615(b). The authority to enter an order of remandment in criminal cases is not specifically granted in Rule 615(b), but is in Rule 366. It is obvious, however, that a reviewing court has such authority in criminal cases when used in connection with other authority specifically stated in Rule 615(b). Likewise, a reviewing court has certain inherent authority, such as the authority to remand a case for a *Batson* hearing (whether peremptory challenges were exercised in violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712). Also, section 5—5—3(d) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3(d)) provides that when a sentence is vacated, the case shall be remanded to the trial court.

Courts of review, however, are just that, and should review the case in light of the record made in the trial court. The nature of judicial proceedings does not contemplate that a case be sent back to the trial court for one side or the other to bolster its position by further presentations, and in the interest of the finality of judgments, such remandments should not be made. It appears here that in the Rule 23 order, the appellate court found no reason to reverse the judgment of the trial court. In fact, it stated that it found no reason to modify the judgment or reduce the sentence. The appellate court, apparently for humanitarian reasons, simply wanted the trial court to take another look at (to reconsider) the sentence, in light of the defendant's age and the fact that the sentence precluded parole. Whether the

appellate court had the authority to do that is not before us in this appeal.

We must consider that the Rule 23 order which the appellate court entered vacated the sentence and remanded the case to the trial court for a resentencing hearing, but with specific and limiting directions. The trial court was to consider the sentence that had originally been imposed in view of the defendant's age and in view of the fact that the sentence precluded parole. That was the mandate to the trial court as contained in the Rule 23 order. On appeal following resentencing, the appellate court, with one justice dissenting, affirmed (152 Ill. App. 3d 361), and found that the trial court had followed the mandate of its previous Rule 23 order.

The defendant raises three issues on appeal. First, the defendant contends that it was mandatory for the trial judge to order a supplemental presentence investigation and report and to consider defendant's post-conviction prison conduct upon reconsideration of the sentence. Second, the defendant argues that the extended-term sentence for armed robbery violated section 5—8—2 the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2), because armed robbery was not in the class of the most serious offense for which defendant was convicted. Finally, the defendant urges that if there is a remand granted for resentencing, the case should be assigned to a different trial judge.

With regard to the first issue, the defendant argues that the provisions of section 5—5—3(d) of the Unified Code of Corrections mandate that after vacation of a sentence and remand, a new sentencing hearing *must* include evidence of defendant's conduct since the original sentence was passed. Section 5—5—3(d) states:

> "(d) In any case in which a sentence originally imposed is vacated, the case shall be remanded to the trial court. The trial court *shall* hold a hearing under Section

5—4—1 of the Unified Code of Corrections which *may* include evidence of the defendant's life, moral character and occupation during the time since the original sentence was passed. The trial court *shall* then impose sentence upon the defendant. The trial court *may* impose any sentence which could have been imposed at the original trial subject to Section 5—5—4 of the Unified Code of Corrections." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3(d).)

As noted above, we must consider the Rule 23 order as vacating defendant's sentence and remanding the case to the trial court for resentencing. Section 5—5—3(d) is therefore applicable. The defendant reads the clause, "which *may* include evidence of the defendant's life *** since the original sentence was passed," in section 5—5—3(d) to mean the court *must* consider defendant's conduct since his initial incarceration. He cites our decision in *People v. Youngbey* (1980), 82 Ill. 2d 556, 562, to show that the word "may" can be mandatory, depending on the drafters' intent. He also argues that our decision in *People v. Harris* (1985), 105 Ill. 2d 290, compels the conclusion that an additional presentence investigation and report must be had before resentencing. He interprets *Harris* to hold that a sentencing hearing under section 5—4—1, which is referred to in section 5—5—3(d), must include a supplemental presentence investigation and report conforming with section 5—3—1. The pertinent portion of section 5—4—1 reads:

"Sentencing Hearing. (a) Except when the death penalty is sought under hearing procedures otherwise specified, after a determination of guilt, a hearing shall be held to impose the sentence. At the hearing the court shall:

(1) consider the evidence, if any, received upon the trial;

(2) consider any presentence reports;

"(3) consider evidence and information offered by the parties in aggravation and mitigation;

(4) hear arguments as to sentencing alternatives; and

(5) afford the defendant the opportunity to make a statement in his own behalf." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—4—1(a).)

The presentence investigation statute reads in relevant part:

"Presentence Investigation. A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court." Ill. Rev. Stat. 1981, ch. 38, par. 1005—3—1.

Finally, the defendant argues that both the Federal Constitution and our State Constitution require that the defendant's post-conviction conduct should have been taken into account at the rehearing. The defendant relies on *Skipper v. South Carolina* (1986), 476 U.S. 1, 90 L. Ed. 2d 1, 106 S. Ct. 1669, *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, and *Williams v. New York* (1949), 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079, to support the proposition that all mitigating evidence must be considered prior to sentencing or resentencing. He further relies on article I, section 11, of the Illinois Constitution of 1970 to show that rehabilitative potential is a principal concern of sentencing, and only the most up-to-date information can reflect the defendant's "real potential for rehabilitation."

As noted earlier, the appellate court's Rule 23 order remanding this case to the trial court for resentencing contains a very narrow mandate with specific instructions, that is, to reconsider the sentence previously imposed in view of defendant's age and the fact that the sentence precluded parole. Also, as the appellate court noted on appeal from the resentencing judgment, the trial court actually had before it and, judging from the statements made by the trial court on resentencing, ac-

tually considered evidence that had been presented concerning the defendant's conduct in prison subsequent to the imposition of the original sentence. It therefore appears that, to a substantial degree, the issues that have been presented with regard to the nature of the hearing on remand are not ripe for consideration in this case. We will therefore address these issues generally and only to the extent necessary for decision under the facts of this case.

There is no question that the rehabilitation of offenders, in order to return them to useful citizenship, is one of the principal goals of our criminal justice system. Both our Constitution (Ill. Const. 1970, art. I, §11) and our Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1001—1—1 *et seq.*) declare that policy. In this case, the defendant has argued as if this were the only goal of our criminal justice system. It is not. There are dual considerations in sentencing. The seriousness of the offense *and* rehabilitation of the offender both are to be given weight. (*People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 556-57; *People v. Waud* (1977), 69 Ill. 2d 588, 596.) It is lamentably true that there are some members of our society from whom the rest of the public must be particularly protected. Our courts have recognized this. (*People v. Wright* (1987), 161 Ill. App. 3d 967, 970-71; *People v. Darnell* (1981), 94 Ill. App. 3d 830, 837-38; *People v. West* (1977), 54 Ill. App. 3d 903, 909-10.) Similarly, our legislature has unquestionably recognized this when enacting some of our sentencing statutes. See, *e.g.*, Ill. Rev. Stat. 1981, ch. 38, pars. 1005—8—1(a)(1), (b), (c) (natural life sentences); par. 1005—8—2 (extended-term sentences); pars. 1005—8—4(a), (b) (consecutive sentences).

The defendant vigorously argues that in section 5—5—3(d) the phrase, "may include evidence," quoted above has to be interpreted to mean a supplemental pre-

sentence investigation must be conducted prior to re-sentencing. This, he says, is because the corrections statutes must be read *in pari materia* and each sentence must consider all mitigating factors, one of those being rehabilitative potential. He says *Harris* conclusively supports this. We do not read our holding in *Harris* that broadly. In *Harris*, the defendants had originally waived a presentence investigation and were placed on probation. When their probation was revoked, they were brought for sentencing on their original felony convictions. Because we had previously ruled in *People v. Youngbey* (1980), 82 Ill. 2d 556, that a presentence investigation was mandatory prior to all felony sentences, we ruled, in *Harris*, that a presentence investigation and report was mandatory following probation revocation absent the limited exception provided in section 5—3—1. The presentence investigation and report required by *Harris* were not supplemental, as the defendant argues for in this case. They were original. *Harris* does not, therefore, control this case.

Today, we decline to give section 5—5—3(d) the mandatory reading defendant urges upon us. In setting forth the statute above, we have emphasized the use of the words "shall" and "may." It is clear from the alternate use of these words that the legislature used "shall" when it intended that a requirement be mandatory, and "may" when the provision was to be discretionary.

In the original Rule 23 order, the appellate court declined to reduce the defendant's sentence, as it might have under Rule 615 (107 Ill. 2d R. 615), given the proper circumstances. It found no abuse of discretion on the part of the trial judge at sentencing which would have justified a vacated sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) Further, the appellate court declared that it saw little, if any, rehabilitative potential in this defendant. Despite this pronouncement, the court,

nevertheless, remanded this case for reconsideration of the sentence with the very narrow and limited mandate previously discussed. On remand, because of the nature of the mandate, the trial court declared it would not consider evidence of defendant's prison conduct and yet the court clearly did address itself to the evidence offered in mitigation at the hearing, as evidenced by these statements by the court:

> "*All that has been shown to me here today* is that Mr. Young has demonstrated a capacity to function in a structured society, whereas he did not demonstrate that capacity in an open society. And this is absolutely in keeping with my original sentencing determination." (Emphasis added.)

And,

> "He has escalated his crime pattern, *and in all respect to witnesses who testified here,* I wouldn't leave him alone with my daughter." (Emphasis added.)

(One witness had testified at the resentencing hearing to the effect that he would not be afraid to leave defendant alone with his daughter.)

Again,

> "I have stated the reasons why I believe that it is appropriate for Mr. Joseph Young to spend the rest of his natural life in the custody of the Illinois Department of Corrections, and *nothing that has happened here today has changed my mind one iota.*" (Emphasis added.)

The court also read, verbatim, large portions from the record of its original sentencing hearing into the second record to show it had previously, and was again, considering defendant's age and rehabilitative potential.

We cannot see from the first sentencing hearing, or from the hearing on remand, that the trial court failed to consider defendant's age or rehabilitative potential, nor did it fail to consider other essential factors in aggravation and mitigation. At the resentencing hearing,

the court actually went beyond the mandate of the Rule 23 order and considered matters which defendant now contends were not considered. As previously noted, because of the narrowness of the mandate and the evidence actually presented and considered, issues which have been raised concerning what should have been considered on resentencing are not really issues in this case.

We consider it appropriate to review some facts the trial court had before it in determining the sentence. At the initial hearing, the court appears to have given a great deal of thought to the defendant's rehabilitative potential or lack thereof. The record shows the court expressed grave concern over the types of persons who were the recipients of defendant's violent attacks. One was a retarded young girl, beaten and then slashed 50 times with a butcher knife when the defendant was 16. The other was Mrs. Davis, a 63-year-old woman who, in the past, had treated defendant as a grandson and who on the day defendant robbed and murdered her, had sat in her home, chatting with defendant and sharing with him a hot lunch which she had prepared. The trial judge found that the manner in which this murder and robbery took place, compounded by the fact that the defendant returned to Mrs. Davis' home the next day with a friend to search for other valuables, while her body was still in the house, constituted brutal and heinous conduct. The trial judge was very clear that his sentence was further based on the fact that only a short while before this premeditated robbery and murder, the defendant had been placed on probation for burglary. The fact that another judge had so recently given the defendant a chance at rehabilitation and the defendant had escalated his criminal activity weighed heavily with the judge's sentencing determination.

What the defendant asks is for his sentence to be vacated and the case remanded so that the defendant's

good prison conduct can be factored into a new sentencing computation. This, we hold, would be an exercise in redundancy, because the trial court, under the mandate of the Rule 23 order, did reconsider the defendant's age and, in addition thereto, also considered evidence of his conduct while in prison. In this case the judge spent a great deal of time explaining his sentence and the reasons for it, both at the initial hearing and at the rehearing. We can only repeat that the trial judge is in the best position to observe and weigh the myriad of factors involved in the sentencing process. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154-55.) We see no abuse of discretion nor consideration of improper factors in this case; consequently, the defendant's natural life sentence is affirmed.

The defendant next raises the issue of the extended 60-year sentence he received for his armed robbery conviction. He asserts this sentence violated the provisions of the Unified Code of Corrections, section 5—8—2(a) (extended-term sentences). The defendant relies on our holding in *People v. Jordan* (1984), 103 Ill. 2d 192, to support the argument that extended-term sentences can only be given for the class of the most serious offense for which defendant is convicted. Because murder is the most serious felony in Illinois and in a separate class from other felonies, defendant claims that his conviction for armed robbery, a Class X felony, is, by statutory definition, a less serious offense for which he cannot receive an extended-term sentence. The defendant contends our holding in *People v. Neal* (1985), 111 Ill. 2d 180, is easily distinguished, because *Neal*'s departure from the ruling in *Jordan* involves only death penalty cases, not sentences of imprisonment imposed under section 5—8—1.

The State relies on the reasoning of the appellate court in the instant case (152 Ill. App. 3d 361), and its interpretation of *Neal* to support the argument that a

sentence of natural life is not like a term of years, because it is indeterminate. The State contends that the extended-term statute only applies to fixed terms of years. It points out the aggravating factors, to which section 5—8—2 refers as supporting extended-term sentences, are all found in section 5—5—3.2, while the aggravating factors involved in natural life sentences are found in section 9—1(b) of the Criminal Code (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)). The State says that these differences prove that the extended-term provisions of section 5—8—2 were not meant to apply to natural life sentences. Consequently, the sentence defendant received for armed robbery was the most serious offense to which section 5—8—2 could apply and the extended term was proper.

The relevant portion of the extended-term statute was:

> "(a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:
>
> (1) for murder, a term shall be not less than 40 years and not more than 80 years." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)(1).)

However, when one turns to section 5—8—1 to see what felony sentences were provided, one finds three possible sentences for murder. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—8—1 (a)(1)(a), (b), (c).) Of these, only the first provided for a fixed term of 20 to 40 years. The other two involve natural life imprisonment sentences. In *People v. Neal* (1985), 111 Ill. 2d 180, we said that if the defendant had been given an extended-term sentence of impris-

onment for murder, he could not have received an extended term for armed robbery, since armed robbery is not in the class of most serious offense for which defendant was convicted. (*People v. Neal* (1985), 111 Ill. 2d 180, 204, citing *People v. Jordan* (1984), 103 Ill. 2d 192, 203-06.) In *Neal*, we distinguished the defendant Neal's death sentence from sentences authorized by section 5—8—1. We referred to sentences under section 5—8—1 variously as terms of imprisonment or terms of years. We held, in *Neal*, an extended-term sentence for armed robbery was proper, even though defendant had been sentenced to death for murder, saying:

> "The statute authorizing extended terms refers to and is bottomed on, in a sense, the maximum sentences 'authorized by Section 5—8—1,' to which it refers. That section refers to *terms of imprisonment* and does not include capital sentences. Obviously a provision for an extended term of imprisonment would not be applicable to a sentence of death." (Emphasis added.) *Neal*, 111 Ill. 2d at 204.

Here, we are presented with two possible interpretations of a natural life sentence. The State says it is not a fixed term of years and its indeterminate nature places it outside section 5—8—2, as did the death sentence in *Neal*. The defendant, however, says a natural life sentence for murder is still a term of imprisonment encompassed by section 5—8—2. As such, it is the most serious class of offense referred to in section 5—8—2, and the Class X felony, of which defendant was also convicted, is a lesser offense.

We hold that as it applied to murder, the extended-term statute (section 5—8—2) applied only to the sentence of a fixed term of imprisonment of 20 to 40 years under section 5—8—1(a)(1)(a).

The Unified Code of Corrections contains separate penalty-enhancement provisions for the crime of murder

distinct from those which support an extended-term sentence under section 5—8—2. If, at a sentencing hearing following a conviction of murder, a jury finds that there is present one or more of the aggravating factors set forth in section 9—1(b) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)), and unanimously agrees that there are no mitigating factors sufficient to preclude the imposition of the death sentence, then the defendant may be sentenced to death. If the jury cannot unanimously agree to that effect, then the court must sentence the defendant under chapter V of the Unified Code of Corrections. (See Ill. Rev. Stat. 1981, ch. 38, par. 9—1(g).) Under chapter V of the Unified Code of Corrections, it is provided in section 5—8—1(a)(1) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)) that if any of the aggravating factors listed in subsection (b) of section 9—1 of the Criminal Code are present, the court *may* sentence the defendant to natural life imprisonment. Also, if the defendant had previously been convicted of murder or was found guilty of murdering more than one victim, the court *shall* sentence him to a term of natural life imprisonment. Section 5—8—1(a) also provided that the defendant may be sentenced to natural life imprisonment if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. This was an aggravating factor that was also listed in section 5—5—3.2(b), which authorized the imposition of an extended-term sentence under section 5—8—2. However, the extended term authorized by section 5—8—2 in 1981 for murder was a term of years of not less than 40 years or more than 80 years.

In our case, one of the aggravating factors set forth in section 9—1(b) was found to exist (murder committed in the course of an armed robbery), but the jury could not unanimously agree that there were no mitigating factors sufficient to preclude the imposition of the death

penalty. Therefore, under section 5—8—1(a)(1), the court had the discretion to, and did, sentence the defendant to natural life imprisonment.

Section 5—8—1(a)(1), in addition to providing for sentences of natural life imprisonment for murder as indicated above, also provided for a term-of-years sentence for murder of not less than 20 years and not more than 40 years. Thus, if a defendant convicted of murder was not sentenced to natural life imprisonment under section 5—8—1(a)(1), he was to be sentenced to a term of imprisonment of not less than 20 years and not more than 40 years. We again quote relevant parts of section 5—8—2(a), which provides for extended-term sentences:

> "(a) A judge shall not sentence an offender to a term of imprisonment *in excess of the maximum sentence authorized by Section 5—8—1* \*\*\* unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:
>
> (1) for murder, a term shall be not less than 40 years and not more than 80 years." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a).

We noted above that the parties in this case have focused on the provision of this section which provided for sentencing an offender to a "term of imprisonment." In determining whether this section may be applied to a case where an offender has been sentenced to natural life imprisonment, the focus should be on the phrase "in excess of the maximum sentence authorized by Section 5—8—1" italicized above. The extended-term sentence provided by section 5—8—2(a) for murder of not less than 40 or more than 80 years is not as severe a sentence as natural life imprisonment that could be imposed under section 5—8—1. Under a sentence of natural life imprisonment, the provisions of the statute with regard

to parole do not apply. Section 3—3—3(d) provides, "No person serving a term of natural life imprisonment may be paroled or released except through executive clemency." (Ill. Rev. Stat. 1981, ch. 38, par. 1003—3—3(d).) Therefore, the authorization in section 5—8—2 to impose an extended-term sentence *in excess of the maximum sentence authorized in section 5—8—1* cannot apply to murder convictions for which a natural life imprisonment sentence has been imposed under section 5—8—1, just as an extended-term sentence cannot be applied to a murder sentence where the death penalty has been imposed, as we held in *People v. Neal* (1985), 111 Ill. 2d 180. In sentencing for murder, the extended-term statute could have only logically applied to cases where a term-of-years sentence (not less than 20 years and not more than 40 years) might have been imposed under section 5—8—1.

In *People v. Neal* the defendant was sentenced to death on a murder conviction and sentenced to an extended term of years on an armed robbery conviction. The defendant contended in *Neal*, as defendant does in this case, that the statute did not authorize an extended-term sentence for armed robbery since that offense is not in the class of the most serious offenses of which he was convicted, that is, murder. This court did not agree and noted, "Obviously a provision for an extended term of imprisonment would not be applicable to a sentence of death." (111 Ill. 2d at 204.) In *Neal*, this court held that the statute allows the imposition of an extended-term sentence of imprisonment for the class of the most serious offense of which the defendant was convicted other than murder when the defendant was also sentenced to death under a separate sentence for murder. 111 Ill. 2d at 204-05.

The rationale of *Neal* governs this case. Obviously, the provision for an extended term of years of imprison-

166

ment cannot be applicable to a murder conviction for which the defendant has been sentenced to natural life imprisonment. The extended-term provision can only apply to a murder conviction in which the authorized penalty is less than the extended term provided by statute for that offense. Here, as in *Neal,* we hold that the statute allows the imposition of an extended-term sentence for the class of the most serious offense of which the defendant was convicted other than murder, even though the defendant was also separately sentenced to natural life imprisonment on the murder conviction.

Because of the conclusions we have reached, it is not necessary to address the remaining issue. The judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.