THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSEPH FRANZEN, Defendant-Appellant.

Second District   No. 2—87—0182

Opinion filed June 9, 1989.

G. Joseph Weller and Beth Katz, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Virginia M. Ashley, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:
After trial by jury defendant, Joseph Franzen, was convicted of aggravated criminal sexual assault, aggravated kidnapping, kidnapping, unlawful restraint and aggravated battery. Defendant was thereafter sentenced to natural-life imprisonment, without parole, for aggravated criminal sexual assault, as an habitual criminal offender, and also received concurrent extended-term sentences of 30 and 10 years for the offenses of aggravated kidnapping and aggravated battery. Defendant appeals, contending (1) that he was improperly denied a continuance of trial to enable new counsel to prepare to defend; (2) that extended-term sentences were improperly imposed for the aggravated kidnapping and aggravated battery convictions as they were not the most serious offenses of which defendant was convicted; and (3) that the Illinois habitual criminal statute (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1 *et seq.*) is unconstitutional. We affirm.

### CONTINUANCE OF TRIAL
The record discloses that Assistant Public Defender Wayne Brucar was appointed to represent defendant in September 1986, and on November 26, 1986, defendant answered ready and demanded trial, which the court then set for January 12, 1987. It appears that on January 9 Brucar and defendant's family had a disagreement concerning whether defendant should present evidence, whether defendant should testify, and whether members of defendant's family should testify. According to Brucar's in-court statements, he had instructed defendant's

family that they would have to hire somebody else if they were displeased with his representation. The next day, attorney Gerald Kielian was retained as defendant's counsel, and on the morning of trial, Monday, January 12, 1987, Kielian requested both leave to file his appearance on behalf of defendant and a continuance to prepare for trial. The assistant State's Attorney informed the court the State had paid air fare for two witnesses, that one witness had already been flown in to testify, and that another witness had been promised he could rejoin his family on Wednesday as he had been forced to cancel a vacation. The court accepted Kielian's appearance as defendant's counsel on the qualified basis that there would not be a continuance, and Kielian was informed that he could renew his motion for a continuance after reviewing discovery so long as it was made before the trial commenced.

Although the trial judge denied the motion for continuance, he did accommodate Kielian in his review of the case. On the day Kielian made his motion, which was scheduled for trial that morning, the court heard only pretrial defense motions. Later, Kielian met with Brucar to discuss the case, and he received copies of Brucar's reports and abstracts; he was also introduced to Brucar's investigator, who was made available for his use. Trial commenced on the following day, but was limited to jury selection. At that time, Kielian neither renewed his motion for a continuance nor sought to withdraw his appearance. The State was not to begin its case until Wednesday in order to give the defense additional time to prepare. No trial proceedings were held on Thursday because of the court's calendar.

On Friday, January 16, 1987, Brucar informed the court that there had been a lack of communication during the trial between himself and Kielian, and Brucar asked for permission to withdraw from the case. Kielian objected to the withdrawal, stating he had been prepared for cross-examination of the State's witnesses but that he was not prepared to proceed with defendant's case alone. The trial judge suggested the attorneys confer regarding defense strategy, stating he would give them more time to present additional evidence. After conferring, the attorneys agreed that Brucar's role would be to assist and advise, and no request for additional time was made. Later that day, the State rested. The only witness presented by the defense on that day was defendant, and earlier that morning Kielian had stated that he was prepared to call defendant as a witness. The trial did not resume until the following Tuesday, giving the defense an additional three days to prepare.

On appeal, defendant contends he was denied his sixth and four-

teenth amendment right to counsel when the trial court arbitrarily and unfairly denied a reasonable motion for continuance, making it impossible for either retained or appointed counsel to properly represent him.

■■■ The right to counsel guaranteed by the constitution includes the right to be represented by counsel of one's choice, but like all constitutional rights, it is not without limits. (*People v. Koss* (1977), 52 Ill. App. 3d 605, 607, 367 N.E.2d 1040.) It is within the trial court's sound discretion to grant or deny a continuance for the substitution of counsel. (*People v. Solomon* (1962), 24 Ill. 2d 586, 589, 182 N.E.2d 736, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94.) Defendant argues that the continuance was not sought for purposes of delaying the trial and the motion should have been granted. However, in determining whether a continuance has been improperly denied, it must appear that the refusal to grant additional time has in some manner embarrassed the accused, impeded the preparation of his defense or prejudiced his rights. (*People v. Clayborne* (1977), 47 Ill. App. 3d 202, 204-05, 361 N.E.2d 1141.) Nothing in the record suggests that defendant was prejudiced in any manner by the refusal to allow the continuance after he employed new counsel shortly before trial. (*People v. Hart* (1973), 10 Ill. App. 3d 857, 859, 295 N.E.2d 63.) Where a motion for a continuance is made on the date of trial, defendant must state substantial reasons for change of counsel (*People v. Wallace* (1976), 44 Ill. App. 3d 89, 92, 357 N.E.2d 858), and no substantial reasons are shown here.

The disagreement between defendant's family and public defender Brucar concerned whether he should present character evidence, whether defendant should testify, and whether members of defendant's family should testify. However, the trial judge did inform defendant that he had a right to testify on his own behalf, even against the advice of his counsel (*People v. Knox* (1978), 58 Ill. App. 3d 761, 763, 374 N.E.2d 957), and defendant did so testify. Even if Brucar acquiesced in attorney Kielian's defense strategies, trial strategy cannot be the basis for a claim of ineffective assistance of counsel. (See *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Moreover, defendant received the benefits of the strategies of Kielian, who was his counsel of choice.

Defendant characterizes his joint representation by the attorneys as an improper experiment. However, in *People v. Hanson* (1983), 120 Ill. App. 3d 84, 89, 457 N.E.2d 1048, 1051, it was held that the trial court had not abused its discretion in denying a continuance for substitution of counsel when that motion was first made on the morning

of trial, where a competent public defender had actively represented the defendant for 10 months and where private counsel was allowed to work with the public defender on the trial. Defendant also suggests that Kielian and Brucar were unable to work together. However, at the time Brucar expressed his concern as an attorney of record that he was not being consulted or utilized, he stated there were no conflicts or clashes between himself and Kielian.

We conclude that denial of the continuance did not interfere with defendant's constitutionally guaranteed right to counsel.

### EXTENDED-TERM SENTENCES

■ The trial court determined that because of defendant's convictions of two counts of aggravated criminal sexual assault, a Class X felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(c)), and his two prior Class X felony convictions within a 20-year period, as described in the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1), defendant was an habitual criminal and imposed concurrent sentences of natural-life imprisonment for the convictions of aggravated criminal sexual assault.

Defendant contends that the court could not impose an extended-term sentence under the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)) for his conviction of aggravated kidnapping, a Class 1 felony (Ill. Rev. Stat. 1987, ch. 38, par. 10—2(b)(2)), as it is a lesser offense than aggravated criminal sexual assault, a Class X felony. The relevant portion of the Code provides:

> "A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of section 5—5—3.2 were found to be present." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a).)

Defendant argues that the plain language of that section provides that an extended term may only be imposed for the class of the most serious offense of which defendant was convicted.

In *People v. Evans* (1981), 87 Ill. 2d 77, 87, 429 N.E.2d 520, the supreme court held that before an extended term can be imposed, the most serious offense of which the offender is convicted must be accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. However, in *People v. Neal* (1985), 111 Ill. 2d 180, 204-05, 489 N.E.2d 845, *cert. denied* (1986), 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292, the court stated that the statute allows the imposition of an extended-term sentence of imprisonment for the class

of the most serious offense of which the defendant was convicted where the defendant was sentenced to a term of years, even though the defendant was also separately sentenced to death for murder.

Our supreme court has recently examined imposition of an extended-term sentence under the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2) for the offense of armed robbery where the defendant was also sentenced to a term of natural life for murder. (*People v. Young* (1988), 124 Ill. 2d 147, 529 N.E.2d 497.) The defendant argued that an extended-term sentence for armed robbery could not be imposed as the statute (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)) provided that an extended term could only be imposed for the class of the most serious offense of which the defendant was convicted. (*Young*, 124 Ill. 2d at 160.) The court rejected this argument, stating that the extended-term sentence for murder, not less than 40 nor more than 80 years, was not as severe as a sentence of natural life that could be imposed under the sentencing provisions of section 5—8—1. Authorization to impose an extended-term sentence in excess of the maximum sentence authorized in section 5—8—1 could not apply to murder convictions for which a natural-life imprisonment sentence had been imposed under section 5—8—1. The extended-term statute could have only logically applied where a term-of-years sentence was imposed under section 5—8—1. Therefore, the court held that section 5—8—2(a) allowed the imposition of an extended-term sentence for the class of the most serious offense of which the defendant was convicted, other than the offense of murder. *Young*, 124 Ill. 2d at 160-62.

Defendant argues he was sentenced as an habitual offender under section 33B—1 and not under section 5—8—1 and therefore *People v. Young* does not apply to his case. (*Young*, 124 Ill. 2d at 160.) However, the language of section 5—8—1(a)(2) specifically incorporates section 33B—1 and states that when a person is adjudged an habitual criminal under section 33B, he shall be sentenced to a term of natural-life imprisonment. The trial judge here sentenced defendant to natural life, and we do not find that he has distinguished *People v. Young* from his case.

In the case at hand, defendant received an extended-term sentence for aggravated kidnapping to run concurrently with a sentence of natural life. The Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(2)) provides for a sentence of natural life for persons adjudged habitual criminals, with no possibility of parole. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—3(d).) The authorization in section 5—8—2(a) to impose an extended-term sentence in excess of the

maximum sentence authorized in section 5—8—1 could not apply to the Class X felonies for which a natural-life sentence had been imposed under section 5—8—1 as section 5—8—2 does not provide for an extended term for a defendant found to be an habitual criminal. *Young* factually involved a sentence for murder and imposition of an extended-term sentence for a lesser felony, while the present case involves sentencing for an offense that acted to place defendant into the category of an habitual criminal, and imposition of extended-term sentences for other lesser felonies. *Young* held that where the defendant received a sentence of natural life, an indeterminate sentence, the trial court may also impose an extended-term sentence upon conviction of a lesser felony for which a determinant sentence is imposed where the lesser felony was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. We find that the analysis of our supreme court in *People v. Young* is applicable to the case at bar and, therefore, that an extended-term sentence ·may be imposed on the most serious offense for which defendant was sentenced to a term of years, here, aggravated kidnapping, even though defendant has also received a sentence of natural-life imprisonment upon his adjudication as an habitual criminal. Because aggravated kidnapping is a Class 1 felony, the applicable extended term is one of not less than 15 years nor more than 30 years' imprisonment (Ill. Rev. Stat. 1987, ch. 38, pars. 10—2(b)(2), 1005—8—2(a)(3)), and it was properly imposed in this case.

■ Defendant also argues that his concurrent extended-term sentence for aggravated battery, a Class 3 felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(e)), was improperly imposed under the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)). When a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may only be imposed for the conviction within the most serious class. (*People v. Jordan* (1984), 103 Ill. 2d 192, 207, 469 N.E.2d 569.) The State agrees, and, pursuant to our authority under Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)), we find that, as defendant has received an extended-term sentence for the more serious offense of aggravated kidnapping, a Class 1 felony, his sentence for aggravated battery should be reduced to five years, the maximum term for a Class 3 felony, to run concurrently with the other sentences.

■ Finally, defendant argues that the Illinois Habitual Criminal Act (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1) is unconstitutional for reasons which have been raised and rejected in numerous prior appeals. Defendant argues that requiring a natural-life sentence without

considering the offender's personal characteristics and the seriousness of the offense violates article I, section 11, of the Illinois Constitution of 1970. However, the rehabilitative objective of this provision does not prevent the legislature from establishing mandatory minimum penalties where it has been determined that no set of mitigating circumstances could allow a proper penalty of less than natural life when required to protect the interests of society. (*People v. Taylor* (1984), 102 Ill. 2d 201, 209, 464 N.E.2d 1059.) The Habitual Criminal Act embodies the legislative determination that a three-time offender should be removed from society since he has shown he is impervious to the rehabilitative efforts of the State. *People v. Hartfield* (1985), 137 Ill. App. 3d 679, 691, 484 N.E.2d 1136, 1144.

■ Defendant argues that preventing consideration of any mitigating evidence violates the due process clause of the Illinois and United States Constitutions and the eighth amendment protection against cruel and unusual punishment. This argument has been rejected in *People v. Morissette* (1986), 150 Ill. App. 3d 431, 443-44, 501 N.E.2d 781, and *People v. Hartfield* (1985), 137 Ill. App. 3d 679, 691, 484 N.E.2d 1136, which relied on *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1090, 450 N.E.2d 1323, 1332, *cert. denied* (1984), 465 U.S. 1052, 79 L. Ed. 2d 726, 104 S. Ct. 1332. These courts concluded, and we agree, that the Habitual Criminal Act did not violate the eighth and fourteenth amendments because two previous adjudications have afforded the defendant the opportunity to present mitigating factors to a court.

■ Defendant argues that the Habitual Criminal Act vests the judicial function of sentencing in the prosecutor in violation of the separation of powers provisions of the Illinois Constitution, the due process and equal protection clauses, and the eighth amendment of the United States Constitution. This argument has been rejected in *People v. Westefer* (1988), 169 Ill. App. 3d 59, 65, 522 N.E.2d 1381, and *People v. Morissette* (1986), 150 Ill. App. 3d 431, 443, 501 N.E.2d 781. Precise guidelines are set forth in the statute to enable the trial judge to determine the applicability of the recidivist statute and the appropriateness of a mandatory life sentence. The statute places no discretion in the hands of the State to determine which defendants qualify for a life term. *People v. McNeil* (1984), 125 Ill. App. 3d 876, 881, 466 N.E.2d 1058, 1061.

■■ Defendant also contends that the Habitual Criminal Act violates principles of double jeopardy. Again, this argument has previously been raised and rejected. (*People v. Westefer* (1988), 169 Ill. App. 3d at 65.) It is recognized that the statute does not constitute

punishment for the prior offenses; rather, the prior adjudications are used to establish matters in aggravation to support the disposition authorized for a third serious offense (*People v. Washington* (1984), 125 Ill. App. 3d 109, 117, 465 N.E.2d 666, 671), and there is no violation of the principles of double jeopardy. Defendant argues he was sentenced under an act that makes a substantive offense of the status of "habitual criminality" because the Habitual Criminal Act is found in the "Specific Offenses" portion of the Criminal Code rather than the Unified Code of Corrections. However, the placement of the Act within the Code is not a relevant consideration. Ill. Rev. Stat. 1987, ch. 38, par. 34—1.

Accordingly, the judgment of the circuit court is affirmed, with the sentence for aggravated battery modified to a five-year concurrent term.

Affirmed as modified.

DUNN and McLAREN, JJ., concur.