THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHER-
MAN SPEARS, Defendant-Appellant.

First District (2nd Division)   No. 1—89—3396

Opinion filed November 16, 1993.

Rita A. Fry, Public Defender, of Chicago (Julie M. Campbell, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Christine Perille, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Defendant Sherman Spears was charged with murder, attempted murder, armed violence, home invasion, aggravated unlawful restraint, aggravated battery and unlawful use of a weapon by a felon. The unlawful use of a weapon by a felon charge was severed and the armed violence, aggravated unlawful restraint and aggravated battery charges were dropped. After a severed jury trial with his co-defendant Larry Felder, defendant was found guilty of murder, attempted murder and home invasion. The trial court sentenced defendant to natural life in prison for the offense of murder and a consecutive sentence of 60 years' imprisonment for the attempted murder. Defendant appeals from his conviction and sentence.

On appeal, defendant raises several points of error. Defendant contends that (1) the trial court erred in allowing the State to introduce evidence of the "Pay Masters" gang; (2) the evidence regarding Robert Felder's statements was hearsay; (3) the trial court abused its discretion in refusing to publish the newspaper article about the incident to the jury; (4) the prosecutor made improper remarks during opening, closing and rebuttal arguments; (5) he was afforded ineffective assistance of counsel; and (6) he was improperly sentenced under the statute. For the reasons set forth below, we affirm defendant's conviction and sentence.

On March 14, 1987, Karen Spaulding and Sharon Eskridge shared an attic apartment in Chicago. Sharon's boyfriend, Guy Brackston, also lived in the apartment. At approximately 10 p.m., Karen and Sharon left the apartment to attend a party hosted by Robert Felder. Robert Felder was the head of a street gang known as "Pay Masters," an organization which dealt in narcotics. Defendant and Larry Felder, Robert Felder's brother, also attended the party. Karen testified that defendant was known to her as "Spiro" and Larry Felder as "Bo." She had known defendant for about six months and Larry Felder for one year.

Sometime in the early morning hours of the party, Robert Felder suffered an asthma attack. While Robert was incapacitated, Karen took Robert's gold necklace. At approximately 5:30 a.m., Karen and Sharon left the party with Guy Brackston and returned to their apartment.

At approximately noon on March 15, 1987, Robert Felder called the apartment twice asking for Brackston. After speaking with Robert, Brackston confronted Karen about the necklace. Karen then returned the necklace to Brackston.

A short time later, Willie Streeter and Larry Byrd came to the apartment. Karen let them in. Streeter had been sent to the

apartment by Robert Felder to collect the necklace and some money that Robert claimed the women had stolen from him. Both Streeter and Byrd sold drugs for Robert Felder.

While Streeter was collecting the money and jewelry, Robert Felder called the apartment and asked to speak to Streeter. He informed Streeter that defendant and Larry Felder were on their way over to the apartment and ordered Streeter to keep the women at the apartment until they arrived. Streeter then explained that Robert's necklace and money had been returned to him. Nevertheless, Robert Felder told Streeter that defendant and Larry Felder were coming over to "gun the bitches." Shortly after this conversation, Streeter and Byrd left the apartment with Guy Brackston.

Streeter returned about 10 minutes later with defendant and Larry Felder. The three entered the apartment while the women were in the living room. Upon entering the apartment, defendant grabbed Karen and yelled that she had gotten him into trouble by taking the necklace. Streeter stepped between defendant and Karen, telling defendant, "Man, you should freeze that, you know. Don't do that."

Larry Felder called Karen into the bedroom and accused her of taking money from his brother. Karen denied taking the money. Larry Felder then began to hit and kick her. After hitting her five or six times, defendant came into the room, noticed Felder leaning his hand against a wall and threw him a towel to remove his prints.

Sharon was then called into the bedroom. As she entered, defendant pushed her onto the bed, then picked up one pillow for himself and another for Felder. With their guns inside the pillows, they opened fire. Sharon died of multiple gunshot wounds. Karen was shot five times.

Defendant, Streeter and Felder fled the scene in a van waiting outside the apartment. In the van, defendant smiled as he said, "Man, we gunned them bitches. We gave the bitches two to the head."

Shortly after the shooting, the police arrived. At trial, Karen testified that while the police were in the apartment Robert Felder called and spoke to her. She stated that Felder threatened to harm her mother and child if she told the police anything about the shooting. Once the police assured her that she would be placed in protective custody, she told them that "Spiro" and "Bo Bo" had shot her and killed Sharon.

On March 17, 1987, defendant was picked up by the police as he left Larry Felder's motel room. A newspaper clipping about the shooting was found in his pocket.

Defendant initially contends that the trial court erred in allowing

the State to introduce evidence of the "Pay Masters" gang, arguing that such evidence was highly prejudicial and that it improperly implied that defendant was involved in other crimes not charged in this case.

We note that defendant failed to raise this issue in the written motion for a new trial. The law is well settled that where a defendant fails to raise alleged points of error in a written motion for a new trial, the issue is waived on subsequent appellate review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 185, 522 N.E.2d 1124.) This failure notwithstanding, defendant urges this court to review the issue as one of plain error. The plain error doctrine is an exception to the rule of waiver (*People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 461) and is applicable "where the record clearly shows that an alleged error affecting substantial rights was committed" (*Young*, 128 Ill. 2d at 46), or where the error occurs "in cases in which the evidence is closely balanced" (*People v. Odle* (1988), 128 Ill. 2d 111, 134, 538 N.E.2d 428).

A review of this case indicates that the plain error rule does not apply here. There is no evidence that defendant was denied a fair trial by the admission of the gang evidence. A defendant's gang membership is admissible if it is relevant to the crime charged. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 488-89, 568 N.E.2d 864.) Relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (*People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295.) Moreover, the trial court, in determining the admissibility of evidence, weighs the probative value of that evidence against the prejudicial effect. The trial court's determination will not be reversed absent an abuse of discretion. *Gonzalez*, 142 Ill. 2d at 489-90.

■ In the instant case, the State's theory was that the leader of the "Pay Masters" gang, Robert Felder, angered by the women's theft of his money and jewelry, sent defendant and Larry Felder to their apartment to kill them. Willie Streeter testified that defendant was Robert Felder's right-hand man, bodyguard and enforcer. According to the State's theory, defendant's gang membership explained why defendant carried out Robert Felder's orders. The trial court did not abuse its discretion in allowing the State to present this evidence to show a motive for the shootings.

Moreover, the record does not demonstrate that the evidence against defendant was closely balanced. Defendant relies on *People v. Smith* (1990), 141 Ill. 2d 40, 54, 565 N.E.2d 900, in support of his assertion that the evidence of his gang affiliation was unfairly preju-

dicial. However, in *Smith*, while our supreme court acknowledged that gang membership was admissible to show motive, the court noted that there was no evidence in that case which linked defendant to a gang or which indicated that defendant had any knowledge of the gang leader's dispute with the victim. *Smith*, 141 Ill. 2d at 59.

The instant case is clearly distinguishable from *Smith*. In this case defendant, unlike the defendant in *Smith*, was linked to the "Pay Masters" gang and to the crimes committed by the direct evidence of one of his victims, Karen Spaulding, and by a fellow gang member, Willie Streeter. Thus, it was not plain error for the trial court to allow the evidence of defendant's gang membership.

Defendant additionally argues that he received ineffective assistance of counsel during the presentation of the gang evidence.

The United States Supreme Court established a two-pronged test for determining ineffective assistance of counsel in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and followed by Illinois in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. In order to prevail on a claim of ineffective assistance of counsel, defendant must prove that trial counsel's representation (1) was deficient and (2) prejudiced his defense to the extent that he was denied a fair trial. For a showing of prejudice, defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) If the ineffective assistance of counsel claim can be disposed of on the ground that defendant did not suffer sufficient prejudice, a reviewing court need not determine whether counsel's errors are serious enough to constitute less than reasonably effective assistance. *People v. Eddmonds* (1991), 143 Ill. 2d 501, 511-12, 578 N.E.2d 952.

It is axiomatic that a defendant is entitled to only a competent defense, not a perfect one. (*People v. Elder* (1979), 73 Ill. App. 3d 192, 203, 391 N.E.2d 403.) This court has stated that "neither an error in professional judgment nor trial strategy can establish incompetency of counsel." (*People v. Fernandez* (1987), 162 Ill. App. 3d 981, 987, 516 N.E.2d 366.) Moreover, tactical decisions, including in some instances the filing of pretrial motions, are beyond review of an attorney's competence. *Fernandez*, 162 Ill. App. 3d at 987.

■ We do not believe that defendant was afforded ineffective assistance of counsel. When the trial court ruled that the gang evidence was relevant, defense counsel reserved the right to object to the scope of the examination of the evidence. We find no evidence to show that, had defense counsel filed a motion *in limine*, the outcome of the trial would have been any different.

We next consider defendant's claim that the evidence of Robert Felder's alleged hearsay statements denied him a fair trial. Karen Spaulding and Willie Streeter both testified to statements made by Robert Felder. Defendant argues that because Robert Felder never testified at trial, he was denied his sixth amendment right to confrontation.

Hearsay is generally inadmissible unless it falls within a designated exception. (*People v. Lawler* (1991), 142 Ill. 2d 548, 557, 568 N.E.2d 895.) Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted. Two exceptions to the hearsay rule are declarations of co-conspirators (*People v. Goodman* (1980), 81 Ill. 2d 278, 283, 408 N.E.2d 215) and statements that are offered to prove the resulting effect on the listener's state of mind or to explain why the listener acted. (*People v. Jackson* (1986), 145 Ill. App. 3d 626, 636, 495 N.E.2d 1207.) In addition, a co-conspirator's statements are admissible, even if they are made after the principle objective was achieved, where the statements are made in an effort to conceal the crime and impress the seriousness of the crime upon someone. *People v. Columbo* (1983), 118 Ill. App. 3d 882, 949, 455 N.E.2d 733.

■ At trial, Karen testified that Robert Felder called her apartment after the shooting. She testified that "he told me that I better not say anything or that he would do something to my mother and my kid." Karen also testified that she was afraid to tell the police what happened immediately after the shooting because of Felder's threats. After being assured that she would be protected, Karen testified that she told the police everything that happened on the day of the crimes and that she identified defendant and Larry Felder as the offenders. Karen's testimony as to Robert Felder's statements was offered as statements of a co-conspirator and to explain her actions and thus was properly admissible as an exception to the rule against hearsay.

Willie Streeter's testimony as to Robert Felder's statements is also excepted from the rule against hearsay. Statements made in furtherance of a conspiracy are those which have the effect of aiding, abetting, or encouraging its perpetration. *Columbo*, 118 Ill. App. 3d at 948.

Robert Felder's statements were made in furtherance of the conspiracy. Robert Felder told Streeter of the plan to have the women killed. Streeter also testified that Robert Felder directed him to keep the women at the apartment until defendant and Larry Felder arrived. In light of these facts, it is clear that Streeter's testimony as to Robert Felder's statements was admissible as a declaration of a co-conspirator.

Defendant next argues that the trial court abused its discretion in refusing to publish the March 16, 1987, Chicago Tribune newspaper article about the incident to the jury. The Tribune article reported that Sergeant Elvin Palmer, a police officer involved in the investigation, stated that Karen Spaulding knew the name or nickname of one of her assailants. The article did not mention defendant's name or nickname and Sergeant Palmer did not testify at trial.

Prior to trial, defense counsel filed a motion *in limine* to prevent the State from introducing any statement contained in the article on the ground that such statements were hearsay. The trial court allowed testimony about the article to be admitted solely to show that the newspaper article introduced at trial was a copy of the original found on defendant at the time of his arrest. The arresting officers, Detectives Edmond Leracz and William Pedersen, identified the newspaper article as a copy of the original they found on defendant.

Defendant later moved to have the article published to the jury. The trial court denied the motion, finding that the defense wanted the article published to the jury for the truth of the matter asserted in the article. The trial court, however, offered counsel the option of having the article published to the jury with the last six words deleted. Defense counsel refused, insisting that the article be published in its entirety.

Defendant now asserts that because the article was not published to the jury, the jury did not discover "inconsistencies" between the statements in the article and Karen Spaulding's testimony. Defendant also asserts that the trial court's refusal to publish the entire article to the jury was unfairly prejudicial.

■Although defendant objected to the trial court's refusal to publish the article, defendant failed to raise this issue in his written motion for a new trial. The law of this State requires that, in order to preserve a question for review, there must be both an objection at trial and a written post-trial motion raising the question. (*Enoch*, 122 Ill. 2d at 186.) Moreover, the alleged error defendant complains of here involved *no more than an evidentiary ruling and not a fundamental right of the defendant.* (*Young*, 128 Ill. 2d at 46.) Because defendant did not properly preserve this issue, he has waived this issue for review by this court.

Defendant next contends that the prosecutor made improper remarks during opening, closing and rebuttal arguments with respect to the gang evidence.

As we have previously stated, gang evidence is admissible to show motive. Arguments and statements based upon the facts in evi-

dence, or upon reasonable inferences drawn therefrom, are within the scope of proper argument. (*People v. Terry* (1984), 99 Ill. 2d 508, 517, 460 N.E.2d 746.) In reviewing allegations of prosecutorial misconduct, the closing arguments must be examined in their entirety and alleged improper statements must be placed in proper context. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 176, 514 N.E.2d 970.) To merit reversal, the prosecutor's remarks must result in substantial prejudice to the accused. *People v. Morgan* (1986), 112 Ill. 2d 111, 132, 492 N.E.2d 1303.

During opening argument, the prosecutor stated that "in [the defendant's] pocket is something that will indicate to you that [he] was very proud of what he did just a couple of days earlier." During closing argument, the prosecutor stated that defendant carried the press clipping as would a "proud father" carry a picture of his newborn baby. Defendant argues that these comments left the jury with the impression that the article contained inculpatory information about him.

■ Contrary to defendant's contention, there is no evidence that the prosecutor's comments suggested that the article contained any information about defendant. The evidence showed that when defendant was arrested by the police a few days after the shooting, the newspaper clipping was found in his pocket. The prosecutor's comments about the article were a reasonable inference drawn from the facts. *Terry*, 99 Ill. 2d at 517.

The prosecutor's comments were also based upon evidence that was presented at trial. Willie Streeter testified to the structure of the "Pay Masters" gang, the order to shoot given by the gang's leader, the smile on defendant's face after he shot the women and the code of honor the gang lived by. Based on the record presented, we cannot say that the prosecutor's comments with respect to that evidence were improper.

Defendant additionally argues that the prosecutor's reference to Robert Felder's telephone conversation with Karen Spaulding during closing argument and his comment, during rebuttal, that in order to acquit defendant, the jury would have to find that the State's witnesses were "lying," were improper. Defendant, however, failed to raise these issues in his motion for a new trial. Therefore, defendant has waived their review in this court. *Enoch*, 122 Ill. 2d at 186.

We now turn to the alleged errors in sentencing raised by defendant. Defendant's first argument is that the trial court improperly relied on his gang affiliation in sentencing him.

■ In Illinois, gang affiliation is but one of the factors a judge may consider when sentencing. (*People v. Harris* (1990), 196 Ill. App.

3d 663, 680, 554 N.E.2d 367.) While the defendant's affiliation with the "Pay Masters" gang may have been a factor, the trial court also heard factors in mitigation and aggravation. Our review of the record does not reveal that the trial judge relied solely on defendant's gang affiliation when sentencing defendant.

Defendant next complains of the disparity between his sentence and that of his codefendant, Larry Felder. Felder was on probation at the time he committed the crimes and received an extended-term sentence, while defendant was sentenced to natural life imprisonment.

We find that the disparity between the two sentences was justified. "A disparate sentence may be supported by either a more serious criminal record or greater participation in the offense." (*People v. Bailey* (1989), 188 Ill. App. 3d 278, 289, 543 N.E.2d 1338.) Defendant had prior convictions for voluntary manslaughter, aggravated battery and possession of a controlled substance with an intent to deliver. His codefendant, on the other hand, had a prior conviction for delivery of a controlled substance. The defendant's more stringent sentence in this case can be justified by his more serious criminal record and does not represent an abuse of the trial court's discretion in sentencing.

Defendant further contends that he was not proved guilty of home invasion because the State did not present evidence that he entered the victims' apartment without authority. Specifically, defendant argues that because Spaulding never asked him to leave and did not testify that she saw defendant's weapon, there was no evidence that defendant's entry into the women's apartment was "without authority." Defendant additionally argues that because the trial court, in response to the jury's note, instructed the jury to rely on the "plain meaning" of the words "without authority" the evidence was not sufficient to establish his guilt under the statute. We disagree.

The relevant question on review of a criminal conviction where a defendant challenges the sufficiency of proof is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Young*, 128 Ill. 2d at 49.

The relevant statutory provision provides:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present \*\*\* and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present and

\*\*\*

(2) Intentionally causes any injury to any person or persons within such dwelling place." Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(2).

■ Contrary to defendant's assertions, a review of the record demonstrates that the jury could have found beyond a reasonable doubt that defendant entered the victims' apartment "without authority." The evidence showed that neither Karen Spaulding nor the deceased victim, Sharon Eskridge, let defendant and Larry Felder into the apartment. On the contrary, Willie Streeter testified that he, defendant and Felder reached the top of the stairs leading to the women's apartment and let themselves in. According to Streeter, Karen and Sharon were in the living room when the three entered. The parties stipulated at trial that defendant was not a peace officer. Furthermore, even if defendant initially had authority to enter the victims' apartment, which he had not, such authority to enter would have been vitiated once he committed the crimes. *People v. Strong* (1984), 129 Ill. App. 3d 427, 430, 472 N.E.2d 1152; *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 1045, 448 N.E.2d 178.

Defendant also argues that the trial court erred in sentencing him to life imprisonment and in finding that his conduct was brutal and heinous. At the sentencing hearing, the trial court stated the following:

"Under [chapter] 38, [section] 1005—5—3.2(b) an extended term may be given when the offense is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The conduct is heinous if it is hatefully or shockingly evil, grossly bad, enormously and flagrantly criminal. Brutal includes conduct which is grossly ruthless, devoid of mercy or of compassion, or cruel and cold-blooded. \*\*\* A single act which causes death or injury may be sufficient to demonstrate the existence of wanton cruelty. \*\*\* Certainly the conduct here was brutal taking those two unarmed women into a bedroom when they knew exactly what was going to happen for the last few minutes of their lives, and then proceeding to use their pistols and pumping them full of bullets. I am going to sentence you, Mr. Spears, to natural life. I am also going to sentence you to a consecutive term of 60 years in the Illinois Department of Corrections, for the shooting of the victim in this particular case. [Chapter] 38, [section] 1005—8—1 and [chapter] 38, [section] 1005—8—2 authorization to impose an extended[-]term sentence in excess of the maximum sentence as authorized under [chapter] 38, [section] 1005—8—1 could not apply to murder convictions for which a natural life sentence has been imposed."

The trial court was correct in finding that defendant's conduct was heinous and brutal. Our supreme court has described brutal as "grossly ruthless," "devoid of mercy or compassion: cruel and cold-blooded." Heinous is described as conduct that is "hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal." (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344.) In the instant case, the shootings were brutal and heinous. They were pre-planned, cruel and cold-blooded.

The trial court also properly sentenced defendant under the Unified Code of Corrections (the Code). Our supreme court has stated that the Code contains "separate penalty-enhancement provisions for the crime of murder" which are distinct from those provisions which support an extended-term sentence under section 5—8—2. (*People v. Young* (1988), 124 Ill. 2d 147, 162, 529 N.E.2d 497; Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2.) The law is clear that where the defendant is sentenced to natural life imprisonment for murder under section 5—8—1, he may also receive an extended-term sentence under section 5—8—2 for a lesser offense. *Young*, 124 Ill. 2d at 163; *People v. Franzen* (1989), 183 Ill. App. 3d 1051, 1057, 540 N.E.2d 548; Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1.

■ Defendant was sentenced to natural life imprisonment under section 5—8—1(a)(1)(b). (Ill. Rev. Stat. 1989, ch. 38. par. 1005—8—1(a)(1)(b).) That section authorizes a sentence of natural life imprisonment for first degree murder where the murder was accompanied by exceptionally brutal or heinous behavior. The trial court found that the murder of Sharon Eskridge merited that sentence.

With respect to the attempted murder of Karen Spaulding, defendant was sentenced to a consecutive term of 60 years' imprisonment as authorized by section 5—8—2(a). The extended-term sentence is authorized "for the class of the most serious offense of which the defendant was convicted, other than the offense of murder." (*Franzen*, 183 Ill. App. 3d at 1057.) In this case, the most serious offense for which defendant was convicted other than murder was the attempted murder of Karen Spaulding. We find nothing in the record or the relevant case law to convince us that defendant's sentence was illegal or improper.

Affirmed.

HARTMAN and DiVITO, JJ., concur.