THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY BRIDGES, Defendant-Appellant.

First District (2nd Division)   No. 1—92—2336

Opinion filed June 13, 1995.—Rehearing denied July 19, 1995.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter D. Fischer, Jon J. Walters, and James Ryan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendant Terry Bridges and codefendant Jason Phillips were tried by a single jury for armed robbery and attempted first degree murder. Defendant was found guilty of both charges and sentenced to concurrent terms of 20 years in prison for attempted first degree murder and 10 years for armed robbery. Codefendant Phillips was sentenced to 10 years for armed robbery. On appeal, defendant contends as follows: (1) the trial court improperly admitted evidence of the circumstances of defendant's arrest, which suggested that he was involved in an offense unrelated to the crime charged; (2) the trial court erred in admitting the gun retrieved at the time of defendant's arrest into evidence; (3) two of defendant's alibi witnesses were improperly impeached; (4) the prosecutor's comments during closing argument and on rebuttal were unfairly prejudicial and denied defendant a fair trial; (5) the cumulative effects of the prosecutor's remarks violated defendant's right of due process; and (6) defendant's sentence for attempted first degree murder was excessive in light of his background and rehabilitative potential.[1] For the

---

[1]To comply with the appellate court page limitations specified by revised Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20,

reasons set forth below, we affirm defendant's convictions and sentences.

The record discloses that on September 23, 1990, at approximately 7:15 p.m., the victims, Sandra Valentino and her daughter, Kim Kruswicki, were unloading packages from Kruswicki's car at the corner of Lexington and Ada Streets in Chicago when defendant and codefendant Jason Phillips approached them. Valentino saw that the man directly in front of her, later identified as defendant, had a gun. Defendant said to Kruswicki, "Give me your purse or it will be murder." At that moment, a neighbor, Julio Montilla, passed by and asked, "What's going on there?" According to the victims, Montilla startled defendant and Phillips. Phillips grabbed Kruswicki's purse and he and defendant ran away. Montilla and Kruswicki chased the men into nearby Arrigo Park. Once through the park, the men split up. Montilla followed defendant southbound on Ada Street and into a housing development just beyond the park. Near Taylor street, defendant stopped and fired three shots at Montilla. Montilla was not hit and continued chasing defendant to Taylor Street. At Taylor, defendant fired another shot at Montilla. As Montilla turned to leave the area, defendant fired four more shots at him. Again, Montilla was not hit.

Officer Daniel Leahy testified that the victims described their assailants as black men in their early to mid-20's. They described the gunman as medium dark, weighing approximately 135 pounds, wearing a Raiders jacket, dark pants and white gym shoes. The other man they described as dark, approximately 5 feet 10 inches, and weighing 145 pounds. Based upon the damage to nearby automobiles, Officer Leahy and his partner surmised that the gun used in the shooting was a .32-caliber automatic.

Defendant was arrested the day after the attack for a different incident. At separate lineups, Valentino and Kruswicki identified defendant as the assailant holding the gun and codefendant Phillips as the other assailant. Montilla also identified defendant as the gunman, but could not positively identify Phillips at the lineup. At trial, Valentino, Kruswicki and Montilla made in-court identifications of defendant.

Before addressing the issues raised on appeal by defendant, we note that they were not preserved in a post-trial motion. The law is well settled that where a defendant fails to raise alleged points of er-

1994), R. 23, eff. July 1, 1994), issues (4), (5) and (6) have been deleted for purposes of publication. The entire decision is contained in the opinion filed with the clerk of this court.

ror in a written motion for a new trial, the issue is waived on subsequent appellate review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 185-86, 522 N.E.2d 1124; *People v. Spears* (1993), 256 Ill. App. 3d 374, 381, 628 N.E.2d 376.) Defendant acknowledges this, but argues that the questions raised before this court are issues of plain error and, thus, are excepted from the doctrine of waiver.

The plain error doctrine is an exception to the rule of waiver and is applicable "where the record clearly shows that an alleged error affecting substantial rights was committed" or where the error "occur[s] in cases in which the evidence is closely balanced." *People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 461; *People v. Odle* (1988), 128 Ill. 2d 111, 134, 538 N.E.2d 428.

■ We do not believe the evidence in this case was closely balanced. However, since most of the issues defendant raises go to constitutional issues involving substantial rights, we will address the issues raised by defendant on the merits as plain error.

The first issues raised by defendant, that the trial court erred in admitting into evidence the circumstances of his arrest and the gun retrieved at the time of his arrest, are interwoven and are best discussed together.

Officer James Hall testified at trial that around noon after the robbery he and his partner, Officer Thomas Newton, patrolled the area where the robbery had taken place. A man ran up to Officer Hall and told him that someone was chasing him with a gun. Officer Hall observed defendant, with a gun in his hand, approaching the man. When Officers Hall and Newton identified themselves, defendant and codefendant Phillips, who was alongside defendant, turned around and began to run in opposite directions. Officer Hall chased defendant into an apartment building, arrested him and retrieved a .38-caliber gun that he had observed defendant discard into an incinerator. Phillips was arrested by another officer, Maureen McMohn, who came to the officers' assistance.

Whether evidence is relevant and admissible is a determination within the discretion of the trial court. (*People v. Jackson* (1990), 195 Ill. App. 3d 104, 111, 551 N.E.2d 1025.) A reviewing court will not disturb a determination that evidence is admissible unless the record fails to demonstrate a sufficient basis for the trial court's decision. (*Jackson*, 195 Ill. App. 3d at 111.) Evidence of other crimes is not admissible merely to show how the investigation unfolded. Such evidence, in order to be admissible, must be relevant and specifically connect the defendant with the crimes for which he is being tried. *People v. Lewis* (1995), 165 Ill. 2d 305, 346.

■ Indisputably, Officer Hall's testimony relative to the circumstances of defendant's arrest and the seizure of the gun clearly informed the jury of defendant's involvement in the commission of other crimes. However, we find no error in the trial court's ruling on these issues. There are relevant similarities between the incidents where defendant was arrested and the crimes charged. In each instance defendant wielded a gun and was in the company of codefendant Phillips. In addition, defendant was observed close to the time and location of the previous incident and, in each incident, defendant and codefendant fled in separate directions to avoid apprehension. This evidence is admissible to show *modus operandi*. *People v. Illgen* (1991), 145 Ill. 2d 353, 364-65, 583 N.E.2d 515.

It also is well settled that a weapon found in a defendant's possession when arrested may be admitted into evidence only where the weapon bears a connection with the charged offense. (*People v. Jackson* (1990), 195 Ill. App. 3d 104, 112, 551 N.E.2d 1025.) "Case law dictates that such a connection exists where the weapon is 'suitable' for the commission of the crime charged." *Jackson*, 195 Ill. App. 3d at 112.

We note defendant's argument that the gun retrieved at the time of his arrest was unsuitable for the crime charged. Defendant relies on Officer Leahy's testimony that a .32-caliber automatic was used. However, Officer Leahy was not qualified as an expert in firearms, and his testimony cannot be used to support defendant's theory that the weapon used in the commission of the crime charged was a .32-caliber automatic rather than the .38-caliber revolver retrieved at the time of defendant's arrest.

Defendant further argues that the supreme court's decision in *Lewis* and this court's pronouncement in *People v. Babiarz* (1995), 271 Ill. App. 3d 153, mandate that the State's argument, that the gun was properly admitted to show the circumstances of defendant's arrest, must be rejected. In *Lewis*, our supreme court held that it was improper to allow the jury to hear evidence of a fingerprint check along with details of extradition proceedings. The case at bar is distinguishable from *Lewis* in that, here, the circumstances surrounding defendant's arrest relative to the time, location, the assailants, the weapon used and the attempt to avoid capture had probative value to the crimes charged. This cannot be said of the fingerprint and extradition proceedings addressed in *Lewis*.

*Babiarz* is also distinguishable from the case at bar. In *Babiarz*, there was overwhelming evidence, through the testimony of the arresting officer and a firearms expert, that the gun recovered from the defendant could not have been the murder weapon. The State demonstrated a negligible connection between the gun and the defendant,

and the surrounding facts and circumstances were not probative of the crime charged. All the relevant factors in *Babiarz* are inapposite to the case at bar.

We find that the testimony here, relative to the circumstances of defendant's arrest, is relevant to connect him with the crimes charged. We also find that the gun retrieved at the time of defendant's arrest is suitable for the commission of the crimes charged.

Defendant also argues that Detective Charles Lahm's statement about a lineup photograph, in which defendant wore a jacket that was evidence in an unrelated crime, was prejudicial. In order to address this issue, we must examine the circumstances which elicited Detective Lahm's statement. Defense counsel made the following comment during his opening statement:

> "I don't know if you're familiar with [a] Raiders jacket, it says Raiders on it and it's black and gray. Now you will notice in the photograph in the line-up that Mr. Bridges is wearing a jacket that says 'Magic,' [a] totally different *** jacket."

During examination by defense counsel, Valentino testified that defendant was wearing a Raiders jacket at the time of the robbery, but that none of the men in the lineup had jackets on when she identified defendant. Defense counsel, during his examinations of both Valentino and Kruswicki, showed them a picture of a lineup (defense exhibit No. 1) in which defendant was wearing an Orlando Magic jacket. Valentino and Kruswicki both testified that this was not the picture of the lineup they viewed.

On cross-examination of Detective Lahm, defense counsel asked him whether defense exhibit No. 1 was a "true and accurate" portrayal of the way defendant looked at the lineup. Detective Lahm responded affirmatively. The record reveals that defendant and code-fendant Phillips were charged in another armed robbery that occurred on the same day as the offense in this case, September 23, 1990. One of the victims of that robbery had told the police, upon identifying defendant at the station, that defendant was wearing the victim's stolen jacket.

At a side-bar conference, the State argued that by introducing a photograph of a lineup that the victims did not view, defense counsel created an inference that the lineup the victims actually viewed was suggestive or unfair. Defense counsel maintained, however, that since both victims testified that this was not the photograph of the lineup they viewed, there was no inference that the lineup was suggestive. The trial court agreed with the State and ruled that, in order to clear up any improper inference, Detective Lahm would be allowed to testify that defendant was wearing a jacket in defense ex-

hibit No. 1, "in order to preserve evidence of an unrelated crime." Defendant contends that this statement was unduly prejudicial and argues that it would have been sufficient for Detective Lahm to testify only that the photograph of defendant with a jacket on was taken as a part of ordinary police procedure.

■ We disagree. Once defense counsel introduced a picture from a different lineup in connection with a separate and unrelated offense, a lineup that the victims had not seen, the inference to be drawn was that there was some confusion or impropriety with respect to the lineup the victims had actually viewed. Defense counsel invited this improper inference during opening argument and cross-examination. At no time did the State make reference to the other lineup in which defendant wore a jacket. Defense counsel, on the other hand, repeatedly did so. The law is well settled that where a "defendant procures, invites or acquiesces in the admission of evidence, even though it be improper, he cannot complain." (*People v. Stephens* (1974), 18 Ill. App. 3d 971, 977, 310 N.E.2d 824.) We find no error in the trial court's decision to allow the State to rebut any inference or suggestion of impropriety with respect to the actual lineup the victims viewed.

Defendant next argues that his alibi witnesses were not properly impeached by the State because the State failed to show the requisite threshold of inconsistency. We address this question notwithstanding our concern that it was not properly preserved.

Defendant called his girl friend, Sharnetta Dodson, and his stepfather, Joseph Mason, as alibi witnesses. Dodson testified that she and defendant were at Mason's home on the evening of the robbery. According to Dodson, she and defendant were watching the Chicago Bears football game on television in the basement at the time of the robbery. She was certain of the time because the lottery numbers had just been announced on television and because Mason and his wife left the house at 7 p.m. to attend a funeral. Dodson testified that neither she nor defendant left the house while Mason was at the funeral.

Joseph Mason, a manager at IBM, testified that defendant was at his home when he left for a funeral and that defendant was home when he returned home at around 9:30 or 10 p.m. Mason never actually saw defendant before he left, but defendant said good-bye to him when he called to defendant from the top of the basement stairs to say he was leaving.

■ It is within the trial court's discretion to regulate the extent of inquiry on cross-examination. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 194, 552 N.E.2d 726.) The latitude permitted on cross-examination is within the sound discretion of the trial court. (*Sando-*

*val*, 135 Ill. 2d at 194.) A reviewing court will not reverse on such issues absent an abuse of discretion which results in manifest prejudice to the defendant. Moreover, it is permissible for the State to inquire about the circumstances of an alibi and whether the witness told the same story previously. (*People v. Ortiz* (1990), 207 Ill. App. 3d 1, 9, 565 N.E.2d 228.) We find no evidence to demonstrate that the State's questioning of defendant's alibi witnesses was improper.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.