THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY L. SIMPSON, Defendant-Appellant.

Third District    No. 3—94—0597

Opinion filed March 18, 1997.

SLATER, J., specially concurring in part and dissenting in part.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Following a jury trial, defendant Larry L. Simpson was convicted of the first degree murder (720 ILCS 5/9—1(a)(1) (West 1992)) and aggravated criminal sexual assault (two counts) (720 ILCS 5/12—14(a)(2) (West 1992)) of five-year-old Amber Sutton. The court imposed consecutive sentences of natural life for murder and 60 years each for the Class X aggravated criminal sexual assaults (730 ILCS 5/5—8—2(a)(2), 5—5—3.2(b)(2), (b)(4)(i) (West 1992)).

The issues on appeal are whether the trial court erred in (1) denying defendant's motion for a mistrial and (2) imposing extended-term sentences for the Class X offenses. For reasons that follow, we affirm defendant's convictions and sentences.

## FACTS

At trial, the State introduced 79 witnesses who testified about the May 29, 1993, abduction and murder of Amber Sutton. Amber's mother, Anna Martin, testified that defendant came to their home around 5:30 p.m. Amber asked for Martin's permission to go play with defendant's daughter, Ashley. Martin denied the request and told Amber she had to come inside to eat. After a few bites of dinner, Amber was allowed to go back outside to play with children in the neighborhood. She was never again seen alive by her family.

Between 6 p.m. and 6:30 p.m., several witnesses saw Amber and four-year-old Damion Barnett walking with defendant in the area between Martin's home and an abandoned power house about seven blocks away. Shelly Webb and Shawn Lee observed defendant playing with the children in the vicinity of the power house and then picking up the little girl near a broken window of the building. About 10 minutes later, they saw defendant walking away from the building alone.

At 6:55 p.m., police dispatcher Beth VanDyle received two 911 calls. The first reported Damion Barnett missing, and the second reported that a little boy was found in the parking lot of Spencer Towers apartments. Damion was unharmed when his mother picked him up a few minutes later at Spencer Towers.

Between 6:30 p.m. and 7 p.m., defendant arrived at the home of his friend, Arthur Wilson. Defendant kept his clothes at Wilson's home. He washed up and then left again. Around 7:15 p.m., defendant was walking with a bundle of clothes in a grocery bag when he encountered Joe Liddell. Liddell gave defendant money for liquor

and agreed to meet him at the home of their friend, Oscar Morrison. Defendant threw the bag into some bushes. He later joined friends at Oscar's, but he left on Liddell's bicycle when the police entered the neighborhood.

Shortly after 10 p.m., Shawn Lee telephoned the police to report his earlier sighting of the little girl reported missing on the evening news. He led the police to the power house where Amber's bloodied and badly beaten body was found. Around the same time, defendant visited a gas station and then walked to Jim's Rib Haven. The station attendant, who had been alerted that the police were looking for defendant, called the police. At 10:30 p.m., the police apprehended defendant in the restroom of the restaurant.

Two days later, Liddell recovered the bag of clothes that defendant was wearing when he was seen with the two children. Liddell turned the parcel over to the police. Forensic evidence established that Amber's blood was spattered on the clothing, and debris from the floor of the power house was on defendant's shoes. Pathologist Dr. Mary Jumbelic testified that she performed an autopsy and determined that Amber died from strangulation and a skull fracture caused by blunt trauma. She could also have died from bleeding of the vagina, the anus or internal organs.

Christine Arnold, defendant's girlfriend, testified for the State as well as the defense. As a witness for the State, Arnold said she kicked defendant out of her house following an argument on May 24, 1993. Testifying for the defense, Arnold said that she and defendant had a normal sexual relationship. On cross-examination, Arnold stated that defendant enjoyed anal sex. The prosecutor then asked Arnold what she and defendant had argued about the day she kicked him out. Arnold responded, "Because I wouldn't give him no sex and he talked about kidnapping my daughter."

Defense counsel moved for a mistrial. In chambers, the prosecutor stated that he had interviewed Arnold on several occasions, and she had always said that the argument was about sex. Arnold had never mentioned a threat against her daughter. Noting the quantity of evidence already presented, the court denied defendant's motion. The court instructed the jury that the testimony was improper and that they should disregard it. On redirect, defense counsel clarified that the daughter Arnold had referred to was defendant's own child.

Following their deliberations, the jury returned verdicts finding defendant guilty of murder and aggravated criminal sexual assault, as charged. The jury chose not to impose the death penalty. The court subsequently found defendant eligible for natural life imprisonment for murder. 730 ILCS 5/5—8—1(a)(1)(b) (West 1992). In addi-

tion, the court imposed 60-year, extended-term sentences for aggravated criminal sexual assault.

## MOTION FOR MISTRIAL

Defendant first argues that the trial court should have granted his motion for mistrial because the prejudice caused by Arnold's testimony could not be cured by the court's admonishments. The State concedes that Arnold's unsolicited comment was improper but contends that defendant has failed to show that he was prejudiced by it.

■ Where improper testimony is inadvertently introduced in a jury trial, the error generally may be cured by sustaining an objection and instructing the jury to disregard the testimony. *People v. Speight*, 153 Ill. 2d 365, 606 N.E.2d 1174 (1992). Whether a mistrial should be granted in such cases is within the broad discretion of the trial court. *People v. Winfield*, 113 Ill. App. 3d 818, 447 N.E.2d 1029 (1983). The trial court's decision should not be disturbed on appeal unless the defendant shows that he was prejudiced by the testimony. *People v. Mabry*, 223 Ill. App. 3d 193, 584 N.E.2d 507 (1991).

■ In this case, Arnold's nonresponsive testimony was clearly unprovoked and surprised the prosecutor. Before ruling on defendant's motion for mistrial, the trial judge noted that the comment carried a high risk of prejudice because, if believed by the jury, it indicated defendant's intent to kidnap a child. See *People v. Bailey*, 249 Ill. App. 3d 79, 616 N.E.2d 678 (1993). However, the judge denied the motion because of the overwhelming evidence of guilt already presented. In open court, the judge admonished Arnold to confine her comments to the questions put to her and admonished the jury to disregard the witness' reference to kidnapping. Then, on redirect examination, defense counsel asked a precise, leading question to clarify that it was defendant's own daughter that Arnold had referred to. No further reference was made to the improper testimony.

Based on the vast amount of unmet circumstantial evidence connecting defendant to the murder, we do not find that the brief, unsolicited comment by Arnold could possibly have affected the jury's verdict. See *People v. LeCour*, 172 Ill. App. 3d 878, 527 N.E.2d 125 (1988). Numerous witnesses saw defendant walking with the victim in the direction of the abandoned power house within minutes of her disappearance from home. Defendant was observed picking up the victim near a broken window of the building where her body was later found and then leaving alone. Witnesses testified that defendant subsequently washed himself, changed clothes, discarded the clothes with the victim's blood on them, and then drank with friends.

Defendant's consciousness of guilt was further demonstrated by his reactions as the police closed in on him. See *People v. McDonald*, 168 Ill. 2d 420, 660 N.E.2d 832 (1995). When the police came into the neighborhood where defendant was partying after the murder, he fled. When the police next caught up with him at Jim's Rib Haven, defendant tried to hide in the restroom. Under the circumstances, we conclude that defendant was not prejudiced by Arnold's reference to kidnapping, any potential prejudice was cured by the trial court's admonishments, and the court did not err in denying defendant's motion for a mistrial.

## SENTENCING

■ Defendant next contends that the court lacked authority to impose extended-term sentences for his two aggravated criminal sexual assault convictions. We disagree.

Section 5—8—2 of the Unified Code of Corrections provides that a defendant may not be sentenced

> "in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:
>
> (1) for first degree murder, a term shall be not less than 60 years and not more than 100 years;
>
> (2) for a Class X felony, a term shall be not less than 30 years and not more than 60 years." 730 ILCS 5/5—8—2(a)(1), (a)(2) (West 1992).

The statute stands for the general rule that where a defendant is convicted of multiple offenses of varying classifications, only the offenses within the most serious class may draw an extended term. *People v. Jordan*, 103 Ill. 2d 192, 469 N.E.2d 569 (1984).

■ However, the statute fails to address the situation in which an indeterminate sentence such as natural life imprisonment is imposed. A discretionary sentence of life imprisonment is authorized by section 5—8—1 for first degree murder (730 ILCS 5/5—8—1(a)(1)(b) (West 1992)), but obviously that sentence cannot be extended pursuant to section 5—8—2(a)(1). Accordingly, it has been held that an extended term may be imposed for the most serious conviction *other than murder* where a defendant is convicted of multiple offenses and life imprisonment is imposed for murder. *People v. Young*, 124 Ill. 2d 147, 529 N.E.2d 497 (1988).

■ As defendant correctly notes, the rule of *Young* has not been applied consistently. Compare *People v. Henderson*, 142 Ill. 2d 258,

568 N.E.2d 1234 (1990) (where death penalty imposed for murder, supreme court reduced aggravated criminal sexual assault sentence to nonextended term), and *People v. Askew*, 273 Ill. App. 3d 798, 652 N.E.2d 1041 (1st Dist. 1995) (where life imprisonment imposed for murder, court reduced armed robbery sentence to nonextended term), with *People v. Spears*, 256 Ill. App. 3d 374, 628 N.E.2d 376 (1st Dist. 1993) (where life imprisonment imposed for murder, court affirmed extended-term sentence for attempted murder), and *People v. Fauntleroy*, 224 Ill. App. 3d 140, 586 N.E.2d 292 (1st Dist. 1991) (where life imprisonment imposed for murder, court affirmed extended-term sentence for armed robbery). However, we find *Young* well reasoned, and we do not believe that our supreme court intended to overrule *Young* by reducing the defendant's aggravated criminal sexual assault sentence in *Henderson. Cf. Askew*, 273 Ill. App. 3d 798, 652 N.E.2d 1041.

In this case, in addition to murder, defendant was convicted of two Class X aggravated criminal sexual assaults, for which the maximum nonextended sentence was 30 years each. 730 ILCS 5/5—8—1(a)(3) (West 1992). After imposing a natural life sentence for murder, the court found that aggravating factors were present, including the victim's age (730 ILCS 5/5—5—3.2(b)(4)(i) (West 1992)) and the fact that the offenses were accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty (730 ILCS 5/5—5—3.2(b)(2) (West 1992)). Therefore, applying the statute pursuant to *Young*, we hold that the trial court did not err in imposing 60-year, extended-term sentences for defendant's aggravated criminal sexual assault convictions (730 ILCS 5/5—8—2(a)(2) (West 1992)).

## CONCLUSION

The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOMER, J., concurs.

JUSTICE SLATER specially concurring in part and dissenting in part.

I dissent from the majority's judgment with regard to the imposition of extended-term sentences for each of the Class X aggravated criminal sexual assaults. The majority recognizes the general rule that where a defendant is convicted of multiple offenses of varying classifications, only the offenses within the most serious class may

draw an extended term. *People v. Jordan*, 103 Ill. 2d 192, 469 N.E.2d 569 (1984). However, the majority relies on the supreme court's decision in *People v. Young*, 124 Ill. 2d 147, 529 N.E.2d 497 (1988), as an exception to this rule.

In *Young*, the supreme court, following the rationale set forth in *People v. Neal*, 111 Ill. 2d 180, 489 N.E.2d 845 (1985), concluded that section 5—8—2(a) of the Unified Code of Corrections (730 ILCS 5/5—8—2(a) (West 1992)) could logically apply only to murder convictions where the defendant was sentenced to a term of years shorter than the extended term. Consequently, as section 5—8—2 could not apply to sentences of death or natural life, a defendant convicted of multiple offenses could receive an extended-term sentence for the most serious conviction other than murder. *Young*, 124 Ill. 2d 147, 529 N.E.2d 497.

In a more recent decision mentioning neither *Neal* nor *Young*, the supreme court construed section 5—8—2 to require the reduction of a defendant's extended-term sentence for aggravated criminal sexual assault to a nonextended term because the most serious of defendant's convictions was murder. *People v. Henderson*, 142 Ill. 2d 258, 568 N.E.2d 1234 (1990). As in *Neal*, the defendant in *Henderson* was sentenced to death, not a term of years.

While the majority recognizes that the supreme court's more recent decision in *Henderson* did not apply the rule in *Young*, the majority nonetheless continues to rely on *Young* as controlling. The majority lauds the reasoning in *Young* and simply remarks that the supreme court did not intend to overrule *Young* when it decided *Henderson*. I disagree.

Clearly, the decisions in *Young* and *Henderson* cannot be reconciled. Subsequent to its decision in *Young*, the supreme court again had the opportunity to construe section 5—8—2, and it chose not to follow its earlier rationale. While *Henderson* did not explicitly overrule *Young*, its rejection of *Young*'s reasoning implicitly did so. See *People v. Askew*, 273 Ill. App. 3d 798, 652 N.E.2d 1041 (1995). The most recent guidance from the supreme court is that an extended-term may be imposed only for the most serious offense of which the defendant has been convicted, even when one of those offenses is murder. I therefore conclude that the imposition of extended-term sentences for each of the aggravated criminal sexual assaults was improper.